**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JAMAAL JOHNSON,

    Plaintiff

v.

TIM GARRETT, et al.,

    Defendants

Case No.: 2:24-cv-00153-APG-BNW

**Order Granting Defendants' Motion for Summary Judgment**

[ECF No. 19]

Jamaal Johnson is an inmate at High Desert State Prison (HDSP).[1] He sues Warden Tim Garrett, Associate Warden Kara LeGrand, and Property Sergeant Nathan Wake for claims arising from his transfer from Lovelock Correctional Center (LCC) to Southern Desert Correctional Center (SDCC) in April 2022, during which two boxes of his legal documents were confiscated. After screening the claims under the Prison Litigation Reform Act (PLRA), Johnson's three remaining claims are against all defendants for (1) denial of access to courts; (2) Fourteenth Amendment due process property deprivation; and (3) First Amendment retaliation. The defendants move for summary judgment. Johnson has not filed an opposition.

I grant summary judgment in favor of the defendants because Johnson does not show that he suffered an actual injury that led to denial of access to courts, that the defendants denied him the process that was due when depriving him of his property, or that the defendants retaliated against him or violated clearly established law.

/ / /

/ / /

---

[1] The defendants asserted Johnson is a prisoner at Northern Nevada Detention Center but later say he resides at HDSP and provide a bed history showing that he resides at HDSP. ECF Nos. 19 at 1; 19-7 at 4.

## I.   BACKGROUND

From February 2020 to April 2022, Johnson was incarcerated at LCC. ECF No. 19-7 at 3. In April 2022 he was transferred to SDCC, and in October 2022 he was transferred to HDSP where he has remained since. *Id.* at 3-4.  When the Nevada Department of Corrections (NDOC) transferred him to SDCC, he had six boxes of personal property, including legal documents. ECF No. 19-9 at 12.  Property Sergeant Wake confiscated two boxes of legal documents and issued Johnson an "unauthorized notice" under Administrative Regulations (AR) 711.01 and 711.1, which allow only one box of personal items and three boxes of legal work. ECF Nos. 4 at 7; 19-10 at 2-3; 19-11 at 4-5.  According to Johnson, Associate Warden LeGrand said he was being transferred as part of a depopulation plan and he could not refuse to transfer. ECF No. 4 at 3, 10.

Johnson filed grievance 2006-31-40597 regarding the confiscation of his boxes and appealed through the first and second levels of the grievance process. ECF No. 19-9 at 12-14. The prison informed him that the boxes did not comply with AR 711.01 and the Inmate Property Manual (AR 711.1) at the time of his transfer and that he could pay to have them shipped to him. *Id.*  There is no evidence that Johnson attempted to have the boxes shipped to him, but he maintains that seizing his property was an unreasonable restriction. ECF No. 4 at 7-8.

Throughout his incarceration, Johnson filed three habeas corpus petitions in state court, all of which have been denied. ECF Nos. 19-2 at 4-5, 8; 19-5 at 2, 7.  He filed his most recent petition in December 2022, which was denied in February 2023 and affirmed in December 2023. *See* ECF Nos. 19-4; 19-2 at 8; 19-5 at 2, 7.  Johnson alleges the defendants transferred him to SDCC and took his legal boxes out of retaliation for filing his habeas petition against Warden Garrett. ECF No. 4 at 9-10.  He also alleges he was denied access to the courts because he did

not have his legal documents, so his habeas corpus petition procedurally defaulted. ECF No. 4 at 3-4.

## II.   ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted).

Johnson did not respond to the defendants' motion for summary judgment. Nevertheless, the defendants still bear the burden of showing there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *See, e.g.*, *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (Rule 56 "prohibit[s] the grant of summary judgment by default even if there is a complete failure to respond to the motion" (quotation omitted)). However,

because Johnson did not rebut the defendants' factual assertions by filing a response brief, I may consider the defendants' facts undisputed and grant summary judgment if the motion and supporting materials show the defendants are entitled to it. Fed. R. Civ. P. 56(e).

> **A.  Johnson's denial of access to courts claim fails because he does not show an actual injury.**

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  This right is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and 42 U.S.C. § 1983 actions. *Id.* at 353 n.3, 354-55.  To establish a violation of the right of access to the courts, a prisoner must establish that he has suffered an "actual injury," meaning the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim" such as dismissal for "failure to satisfy some technical requirement" or being "so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* at 349, 351.

The defendants argue that Johnson's loss of two boxes of legal documents did not create an actual injury because the Nevada courts denied his habeas petition on the merits.  The defendants took Johnson's boxes in April 2022, after all but his most recent habeas petition filed in December 2022.  The Nevada state court denied that petition because the Supreme Court of Nevada had previously rejected all the grounds on which it was based. ECF No. 19-2 at 6. Johnson appealed, and the Nevada Court of Appeals affirmed on the merits of Johnson's arguments, detailing why each of his grounds for relief failed. ECF No. 19-5 at 3-7.  The Supreme Court of Nevada affirmed. *Id.* at 2.

Johnson noted in his original petition and in his appeal that the NDOC confiscated two legal boxes pertaining to the case, but he did not say that he would have presented evidence or

cited to authority if he had the missing documents. ECF Nos. 19-3 at 4; 19-4 at 4.  The opinions from the Nevada state courts address the merits of Johnson's arguments and do not "procedurally default" the case as Johnson claims in his complaint.  Rather, the procedural bars that the Nevada Court of Appeals identifies are that he brought his petition 17 years too late and that he had already filed a habeas petition that was decided on the merits. ECF No. 19-5 at 4-5.  The Court of Appeals also found that it had no jurisdiction over an appeal of Johnson's second habeas petition, which had been denied in September 2020, almost two years before the defendants took his boxes. *Id.* at 6-7.

Johnson has failed to show that losing the boxes caused an actual injury in his habeas petition litigation.  Therefore, there is no evidence that the defendants denied Johnson access to the courts.  I grant summary judgment in the defendants' favor on this claim.

**B.  Johnson's Fourteenth Amendment due process property deprivation claim fails because he received the process that was due.**

To state a procedural due process claim, Johnson must show (1) he had a liberty or property interest protected by the Constitution; (2) the defendants deprived him of that interest; and (3) a lack of process. *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000).  When determining what process is due, the law distinguishes between whether the government authorized the deprivation versus whether the deprivation was the result of a government employee acting in an unauthorized manner.  An authorized deprivation of property is the result of an "established state procedure" that "destroys a complainant's property interest, by operation of law." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (quotation omitted).  An unauthorized deprivation occurs through a "random, unauthorized act by a state employee, rather than by an established state procedure." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  An

unauthorized deprivation does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." *Id.* But that rule does not apply where a state official "is acting pursuant to a state policy and deliberately carrying out what appears to that official to be proper procedures." *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). Where there is an authorized deprivation of property, the state has a constitutional obligation to afford a meaningful opportunity to be heard. *Id.* at 1036-37.

Property Sergeant Wake took Johnson's boxes under AR 711.1 and issued him an "unauthorized property" notice. Therefore, Wake carried out an authorized deprivation of property. The prison's procedures satisfy the due process requirements because AR 711.1 allows an inmate to contest property-related issues. The inmate receives notice through the unauthorized property notice, which prison staff must deliver to the inmate. ECF No. 19-11 at 10. And the inmate has an opportunity to respond because they are given ten days to return their unauthorized property notification to the staff indicating whether they choose to have the property shipped at their own expense, disposed of, or donated to charity. *Id.* The inmate also may appeal the decision through the offender grievance process. *Id.* During the grievance process, the prison holds the property. *Id.* During a transfer, indigent offenders "qualify for indigent postage for unauthorized valuable property," and there is a process for inmates to request "indigent postage for unauthorized valuable property." *Id.* at 7-8.

Johnson made full use of the grievance process by appealing his grievance twice. During that process, he was told that he could pay to have the boxes shipped to him, but there is no evidence that he chose to do so. AR 711.1 satisfies due process requirements because it protects Johnson's property while he uses the procedures available to him before the property is finally

confiscated or destroyed.[2] *See Reece v. Shepherd*, No. 3:14-cv-00192-MMD-VPC, 2015 WL 5813243 at *4-5 (D. Nev. Oct. 5, 2015).  Because Johnson received the process that was due, I grant summary judgment in the defendants' favor on this claim.

### C. Johnson's First Amendment retaliation claim fails because he does not show that the defendants retaliated against him and the defendants are entitled to qualified immunity.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (internal footnote omitted).

The defendants argue that they could not have retaliated against Johnson by transferring him to SDCC because they were not on the committee that made the transfer decision.  Donald Southworth, NDOC's Chief of the Offender Management Division (OMD), declared that Johnson and approximately 40 other offenders were moved from LCC to SDCC as part of a "system-wide transfer program with the goal of depopulating NDOC institutions located in Northern Nevada." ECF No. 19-8 at 3.  OMD determines an offender's placement based on many factors, and a committee decides institutional classification. *Id.* at 2-3; ECF No. 19-6 at 4-5.  Associate Warden LeGrand stated that neither she nor the other defendants were involved in OMD's operations. ECF No. 19-12 at 3.  Johnson does not respond, so he presents no evidence

---

[2] The defendants state that the boxes are still in NDOC's custody. ECF No. 19 at 9 n.5.  It is unclear whether Johnson could still attempt to have them shipped to him.

showing the defendants personally participated in the transfer or that the transfer was retaliatory. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (stating that "for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation").

Johnson also alleges that Garrett and LeGrand ordered Wake to seize Johnson's boxes out of retaliation. However, the defendants are entitled to qualified immunity because Johnson does not meet his burden to show that the defendants violated a constitutional right that was clearly established at the time of the violation. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (stating that in the qualified immunity analysis, the "plaintiff bears the burden of showing that the rights allegedly violated were clearly established" (quotation omitted)). Johnson did not respond to the defendants' motion for summary judgment and did not point to clearly established law that he claims the defendants violated.

There is no evidence that the defendants transferred Johnson to SDCC in retaliation, and Johnson points to no clearly established law that taking his boxes violated his constitutional rights. I therefore grant summary judgment in the defendants' favor on this claim.

## III.   CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 19) is GRANTED.**

I FURTHER ORDER the clerk of court to enter judgment in favor of the defendants on all claims and to close this case.

DATED this 19th day of March, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

8